PIER 3, INC., Plaintiff and Appellant, *v.* MANUEL V. DOMENECH, substituted by RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 7204. Argued December 10, 1936.—Decided June 9, 1937.

*Henry - G. Molina* for appellant. *B. Fernández García, Attorney General,* and *R. Cordovés Arana, Assistant Attorney General,* for appellee.

Mr. Justice Hutchison delivered the opinion of the court.

Pier 3, Inc., plaintiff in an action to recover taxes paid under protest, appeals from an adverse judgment. The only questions raised by the assignment of errors are:

*"First error:* The court erred in not holding that the dolphins and piles are improvements which belong to the People of Puerto Rico and hence are not subject to taxation, under section 291(*b*) of the Political Code.

*"Second error:* The court erred in not holding that the valuation of the piles and dolphins was erroneous or exaggerated, because the total value of the absolute title over said piles and dolphins had been fixed, as if appellant had been absolute owner of said piles and dolphins, instead of fixing the value of the leasehold interest, which is all which appellant has over said piles and dolphins."

We have not before us any transcript of the evidence. Certain apparently undisputed facts may be gathered, however, from the pleadings, from the "statement of the case and opinion" filed by the district judge and from the briefs.

 In October 1928, the Governor approved a franchise whereby the Public Service Commission authorized the construction, maintenance, and operation of "a two-story public service pier and all appurtenances thereto at the site and place indicated as proposed pier number three." The authorization was to "include all work and operations of whatever nature that may be necessary for the successful and economical operation of the pier, and all appurtenances thereto hereby authorized to be constructed, maintained and operated." By section 2 of the franchise, the grantee, plaintiff's predecessor in interest, was required to "construct through said pier a railroad track which shall connect with the line of the American Railroad Company of Puerto Rico in front of said pier number three." By the terms of section three, the grantee was required to enter into a contract with the Commissioner of the Interior for a lease of the submerged lands, "the property of the People of Porto Rico," upon which the proposed pier was to be built. He was also required to enter into a contract with the San Juan Harbor Board "for the surrender of that portion of the bulkhead already constructed by the Harbor Board which the grantee" intended to occupy. Section eleven was in part as follows:

" . . . . the pier, railroad and all appurtenances thereto, equipment and facilities of the grantee, and all property constructed or used hereunder may be taken, purchased, or acquired by the People of Porto Rico, at any time during the term of this franchise, at their fair and reasonable valuation not to include the value of this franchise or any added value which the said franchise may have given to the said works or property of the grantee, and shall not exceed the cost of such works and property less depreciation; provided, however, That upon the expiration of the term of this franchise the lands belonging to the People of Porto Rico, including reclaimed lands, and all improvements made therein by the grantee, exclusive

of buildings, shall revert to the People of Puerto Rico free of all cost.''

The two-story pier built under the authority of this franchise upon submerged lands belonging to the People of Puerto Rico, after the execution of a long term lease, did not necessarily become *ipso facto* the property of the People of Puerto Rico as a part of the land upon which it was built. The provision in section 11 of the franchise for the taking, purchase, or acquisition by the People of Puerto Rico of the pier and other property constructed by the grantee for a consideration at any time during the term of the franchise at a fair and reasonable valuation, definitely negatives the existence of any intention on the part of the contracting parties that the pier when built was immediately to become the property of the People of Puerto Rico. By the express terms of sections 1463 and 416 of the Civil Code (1930 ed.) a lessee may remove from the leased premises any improvements made thereon by him ''if it be possible to do so without damage to the property.'' Obviously this right of removal presupposes ownership in the lessee although, if he does not exercise the right of removal, his title to the improvements will pass to the landlord.

The proviso in the franchise was, in substance, a restatement of sections 1463 and 416 in so far as applicable to the relationship of landlord and tenant and to improvements other than buildings. The proviso was more specific, however, in its reference to the expiration date of the term of the franchise and, to that extent, evinced somewhat more clearly a purpose to anticipate and to forestall any claim of ownership or any exercise of the incidental right of removal by the grantee after expiration of the term of the franchise.

█ The piles and dolphins referred to in the second assignment were assessed by the Board of Equalization at $138,260.00. If, at the time when the franchise was granted and the lease of the submerged lands was executed, the par-

ties had understood and intended that the piles and dolphins when placed in position would immediately become a part of the submerged lands and as such the property of the lessor, and that plaintiff thereafter would retain only a leasehold interest in the said piles and dolphins, it is not probable that they would have fixed as a reasonable rental value of the leased property the rate specified in the lease, namely $120 a year for a term of fifty years.

The brief for appellant furnishes no satisfactory reason for differenciation between substructure and superstructure in a case of this kind. The piles which formed the substructure were part and parcel of the "two-story public service pier". The dolphins, if not a component part of the pier, were appurtenances, not separate or independent "improvements." The franchise did not provide for the construction of a pier and the erection thereon of a two-story building but authorized the construction, maintenance, and operation of "a two-story public service pier."

The district judge was right, we think, in construing the proviso to mean that the improvements therein referred to would become the property of the People of Puerto Rico at the expiration of the franchise. If the "two-story public service pier" was a building within the meaning of the phrase "exclusive of buildings" contained in the proviso, neither the dolphins nor the piling would pass to the People of Puerto Rico under the terms of the proviso at the expiration of the lease. If the "two-story public service pier" can be classified as one of the "improvements" other than "buildings" referred to in the proviso, then the title to the dolphins and piling would vest in the People of Puerto Rico at the end of the fifty-year period specified in the franchise and in the lease. In the absence of any data as to the rate at which dolphins and piling deteriorate, we need not speculate as to probable depreciation in value during such a period. We have no more reason to believe that the Board of Equaliza-

tion overestimated the value of the dolphins and piles through failure to take into consideration the qualified character of plaintiff's property right therein than we have to believe that the board underestimated the value of the dolphins and piles through its failure to take into consideration the probable enhancement in value by reason of the privilege of maintaining and operating the pier for a period of fifty years.

It would have sufficed to say perhaps that appellant has not placed us in a position to pass upon the questions sought to be raised by the assignment of errors. If, however, we are correct in the conclusions reached, what we have said disposes in one way or another of both questions as developed in the brief for appellant.

The judgment appealed from must be affirmed.

Mr. Chief Justice Del Toro and Mr. Justice Córdova Dávila took no part in the decision of this case.